**UNITED STATES of America,
Plaintiff,**

v.

**Nyishawn Nicole BROWN, Defendant.**

**No. CR 03–496–02–RE.**

United States District Court,
D. Oregon.

Nov. 19, 2004.

Frank Noonan, Assistant United States Attorney, Portland, OR, for Plaintiff.

Michael Levine, Portland, OR, for Defendant.

OPINION AND ORDER

REDDEN, District Judge.

The matter before the court is defendant's motion (doc. 66) to suppress statements. Defendant moves to have his statements suppressed because (1) the advice of rights he received under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was inadequate in several respects, and (2) federal law enforcement agents did not electronically record the interrogation.

Defendant, along with two co-defendants whose cases have been severed from his, is charged in count 4 of an 8–count superseding indictment with bank robbery and illegal possession of firearms in connection with a September 12, 2003, robbery of the Sterling Savings Bank in Portland, Oregon.

Oral argument on this motion was held on July 8, 2004; July 13, 2004; and September 15, 2004. FBI Special Agents Doran Michels and Thomas Alston both testified, as did defendant and an expert who has tested defendant's reading ability and comprehension level.

*Factual Background*

On January 15, 2004, federal law enforcement officers arrested defendant in connection with the bank robbery. Agent

Michels testified that the officers had no weapons drawn as they approached defendant, and defendant was friendly during the encounter. After the arrest, Agents Michels and Alston escorted defendant to the Portland Police Bureau's Detective Division on the 13th floor of the Justice Center. Both agents testified that defendant was cooperative. In the car, Agent Alston talked to defendant, but the conversation included no discussion of defendant's situation. At the detention center, Agent Alston gave defendant something to drink and cigarettes. Beginning at approximately 3:00 p.m., Agents Michels and Alston then began to interrogate defendant.

Prior to the interrogation, Agent Michels gave defendant an advice of rights/waiver of rights form and told him to read the form aloud. Defendant did so. Agent Michels testified defendant read fine, pronounced words correctly, indicated he understood his rights, and signed the waiver of rights form. Agent Alston testified he did not recall hearing defendant read the warnings aloud.

Defendant testified he informed the agents that he had smoked six marijuana "blunts"[1], a fairly large amount of drug, that morning and was still under the influence of the drug. The agents did not ask him what time he had smoked the drug. Agent Alston testified he could not recall any discussion with defendant about marijuana. He said defendant had no difficulty communicating, and defendant's communication was relevant, intelligent, articulate, and coherent. He said defendant did not appear to be impaired by alcohol or marijuana.

Agent Michels recalled defendant mentioning he had smoked marijuana earlier that morning and was still under the influence. He testified that when the agents told defendant they had seen him driving a car and he was driving well, and that he was speaking coherently now, defendant responded that he was fine and not impaired. Agent Michels said defendant was lucid and coherent during the interview. He said initially defendant's statements were somewhat inconsistent, but became more consistent as the interview progressed. He said defendant made responses that were appropriate to the questions asked.

Agent Alston testified that the agents told defendant that it was in his best interest to be truthful and that his cooperation would be communicated to the U.S. Attorney's Office. Agent Alston testified defendant was not threatened, nor were any inducements offered. He does not recall discussing with defendant the years of imprisonment Defendant might be facing.

Agent Michels testified that, after defendant's first account, he told defendant he did not think he was being truthful. He testified he told defendant he had no control over the result, but would pass information on to the prosecutor. He told defendant that in some circumstances defendants get a reduction in sentence if they are truthful. Agent Michels testified he discussed the federal sentencing guidelines in general with defendant, but did not discuss any specific sentence. Agent Michels testified that he told defendant he was in a serious situation in that he had been indicted for a bank robbery and Agent Michels had facts in the case that defendant might not be aware of.

Agent Michels testified he told defendant he thought his girlfriend was aware

---

1. A "blunt" is a marijuana cigarette made by removing the shredded tobacco from a cigar and filling the cigar with marijuana.

of the bank robbery and knowingly let defendant use her car. Agent Michels testified he told defendant he was not going after his girlfriend and that he had no desire to break up his family. He testified he did not say defendant's girlfriend could be arrested and her children taken away.

Agent Alston testified he recalled talking to defendant about his girlfriend, but does not recall telling him his girlfriend's children might go into juvenile detention. He does not recall telling defendant that if he did not talk to the agents, his girlfriend would be arrested or defendant's house might be searched, with things possibly getting broken and damaged in the search.

According to the agents, defendant confessed during the interrogation to participating in the robbery as a getaway driver.

Defendant denies making the confession. Defendant says that during the interrogation he repeatedly denied his guilt. Defendant testified the agents threatened to kick in his front door, tear his house up, and take his girlfriend into custody.

Defendant testified that he did not read the words of the *Miranda* warning, but rather "I just mumbled. And went over the words I didn't know, just like da, da, da, da." Defendant testified that he had great difficulty reading the form aloud. He said he did not fully understand either the advice of rights or the waiver, and he signed the waiver only because Agent Michels threatened to go to his home and take his girlfriend (a working mother with children at home) into custody if he did not cooperate. He recalled that he told the agents he understood his rights, but he testified that he signed the waiver only because the agents threatened him.

Agent Michels confirmed that he did not tape record the interview. He testified it is FBI policy not to record interviews.

At oral argument, the court also heard testimony from Tanya Brame, Director of Education at the Sylvan Learning Center. Ms. Brame and an assistant administered a battery of standardized reading proficiency and comprehension tests to defendant. Ms. Brame testified that the testing procedures used are standard and universally accepted in the education community, which procedures enable one to assess the reading skill and comprehension level of an individual tested relative to the rest of the population. In addition, Ms. Brame reviewed the advice of rights/waiver of rights form Agent Michels gave defendant to read aloud.

Ms. Brame testified defendant reads at a rate of 222 words per minute, yet comprehends only 20 percent of what he reads. Further, defendant's reading level contained inaccuracies even at the grade equivalent of 2.5. She testified defendant's comprehension level increases dramatically when words are read to him rather than reading them himself, which she said is a very common occurrence among people who have reading difficulties. She explained that when an individual with reading difficulties reads something aloud, he or she focuses the greatest proportion of their cognitive energies on pronouncing the words correctly with the proper inflection and cadence. This necessarily leads to less energy devoted to comprehension of the words being read.

Based on defendant's grade equivalent scores and percentiles reflected in the tests she administered, Ms. Brame concluded that defendant reads at a 2nd grade level.

As to the advice of rights/waiver form, Ms. Brame testified that a person of defendant's reading ability would not be able to read and understand the form. She identified several words that would be difficult for a person of defendant's reading level to

read aloud and comprehend at the same time, such as "lawyer," appointed," and "advice." She said that the difficulty lies in reading and comprehending at the same time, and that an individual of defendant's reading ability could understand these words if they were read to him by someone else. She stated her professional opinion that the advice of rights/waiver of rights form is written at the level of a strong 3rd grader (*i.e.*, a child at the end of the 3rd grade or beginning at the 4th grade). A child at a lower grade may be able to sound the words out, but would not be able to understand them as he or she read them. She stated there is a tremendous difference between someone like defendant, who reads at a 2nd grade level, and someone reading at a strong 3rd grade level.

### Motion to Suppress

Defendant argues the *Miranda* warnings were invalid because (1) the agents failed to read defendant his rights, instead instructing him to read them aloud, which resulted in the agents not adequately conveying what his rights were; (2) the agents told him "it was in his best interest to be truthful," a statement that is incompatible with defendant's right against self-incrimination; and (3) defendant was incapable of making a knowing, intelligent, or voluntary decision because he was threatened and coerced and was high on marijuana at the time. Defendant also argues the court should suppress his alleged confession, as a matter of due process or pursuant to the court's supervisory power, because the officers did not electronically record the interview even though recording devices were readily available.

■ *Miranda* warnings must adequately and effectively apprise an accused of his right to remain silent. *Miranda v. Arizona,* 384 U.S. at 467, 86 S.Ct. 1602. The government must prove that the ac-

cused voluntarily, knowingly, and intelligently waived his *Miranda* rights. *Id.* at 475, 86 S.Ct. 1602. The government's burden is a heavy one and courts must indulge in "every reasonable presumption against waiver." *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Courts must examine the totality of circumstances in determining the validity of a waiver. *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).

■ This court agrees with defendant that his *Miranda* warnings, and subsequent waiver of the same, were inadequate. The uncontroverted expert testimony at oral argument established that defendant's reading and comprehension skills are very poor, and would be further compromised if he attempted to read aloud and comprehend something at the same time, especially in a situation where he had been directed by law enforcement officials to do so. Agent Michels did not read the advice of rights/waiver of rights form to defendant, but rather instructed defendant to read it aloud. Agent Michels testified defendant read the form aloud just fine. However, based on the opinion of Ms. Brame, this court finds credible defendant's testimony that he did not really read the words of the *Miranda* warning, but rather mumbled over the words he did not know. This court also finds credible defendant's testimony that he did not fully understand his rights or the waiver.

Further, it is undisputed that defendant told the agents he had used marijuana earlier in the morning. The influence of drugs or alcohol is a factor that should be considered in determining the validity of a waiver. *United States v. Betters,* 229 F.Supp.2d 1103, 1107 (D.Or.2002). Although it is well known that marijuana can have a detrimental effect on cognitive functioning, the agents made no attempt to determine the time defendant used the

marijuana in order to gauge defendant's possible impairment and ability to understand his rights. Further, even though he knew of the drug use, Agent Michels made no effort to review the advice of rights form with defendant after defendant read it aloud in order to ensure defendant comprehended what he read aloud. At the least, Agent Michels' knowledge of defendant's drug use that day should have discouraged him from using a procedure for advice of rights that required defendant to read aloud at the same time he was required to comprehend what he was reading.

This court concludes that, in the context of the reading/comprehension and drug considerations discussed above, together with the exacerbation of the considerations by the stress inherent in any custodial interrogation, Agent Michels' procedure of requiring defendant to read the advice of rights form aloud was not adequate to provide defendant with an effective appraisal of his rights, as required by *Miranda*. Because the court resolves this motion on this basis, the court need not address defendant's other arguments in support of his motion to suppress.

For the reasons discussed above, defendant's motion (doc. 66) to suppress statements is GRANTED.

IT IS SO ORDERED.